351 P.2d 449

Lillard H. JOHNSON, Plaintiff-Appellant,

v.

Benny SANCHEZ, Commissioner of Motor Vehicles of the State of New Mexico, Defendant-Appellee.

No. 6517.

Supreme Court of New Mexico.

March 15, 1960.

Rehearing Denied May 13, 1960.

Reese, McCormick, Lusk & Paine, Carlsbad, for appellant.

Richard H. Robinson, Chief Counsel, Bureau of Revenue, Santa Fe, N. Mex., Frank Mims, Albuquerque, N. Mex., for appellee.

CARMODY, Justice.

This appeal results from plaintiff's unsuccessful attempt to have the district court set aside the suspension of his driver's license by the defendant, commissioner of motor vehicles.

The basic questions are: (1) What is the type of a hearing to which the suspended licensee is entitled in the district court;

and (2) is the New Mexico statute authorizing suspension of an automobile operator's license constitutional?

Plaintiff Johnson had an automobile operator's license which by its terms expired May 31, 1959. On March 12, 1958, he was interviewed by a driver improvement officer, and as a result of the officer's recommendation, the division of motor vehicles suspended Johnson's driving privileges and all licenses for a period of six months from March 19, 1958. Johnson then requested a hearing before the commissioner, which was granted on April 10, 1958. The hearing resulted in the suspension being sustained, and the plaintiff then filed this action under the above statute. The trial court, after a hearing, ordered that "Plaintiff * * * be, and is hereby, suspended from the privilege of operating a motor vehicle in the State of New Mexico for a period of one year commencing September 12, 1958 and ending September 11, 1959."

Johnson thereafter appealed, and the judgment was superseded upon his furnishing a bond.

While the case was pending in this court and before the reply brief was filed, plaintiff moved to dismiss the appeal on the ground that it was moot because the license of the plaintiff had expired by its own terms. However, the motion, in effect, seeks to have this court not merely dismiss the appeal but also seeks the affirma-

tive relief that the judgment below be declared to be inadmissible in any proceeding relating to the plaintiff's license.

Thus, it would appear that the plaintiff, by superseding the judgment until his license expired, would, in effect, seek to entirely void the judgment and avoid its consequence.

■ Aside from the question of whether plaintiff's license was revoked or whether his driving privileges were merely suspended (regardless of license), the case is not moot because the judgment could conceivably affect plaintiff's qualifications for an operator's license in the future. Strasser v. MacDuff, 1953, 282 App.Div. 1106, 126 N.Y.S.2d 357. Compare Freeman v. Medler, 1942, 46 N.M. 383, 129 P.2d 342.

Therefore, we find the motion to dismiss without merit.

Plaintiff's appeal is based upon several claimed errors on the part of the trial court, principally concerned with the type of hearing allowed, the admission of some and refusal to admit other evidence, and the court's findings with regard to whether plaintiff's prior convictions of traffic offenses indicated a disrespect for traffic laws or disregard for the safety of others, and whether there was evidence that the plaintiff was habitually reckless or negligent so as to warrant a suspension of his license. The plaintiff also, by his reply brief, strenuously argues that the statute

with respect to operators' licenses is unconstitutional because of its failure to provide specific standards warranting the suspension of licenses by the commissioner.

■ We will first dispose of the contention by the plaintiff that the statute is unconstitutional. This is a matter which was neither raised in the trial court nor in the brief in chief, and we have consistently held that we will not consider such matters unless they have been passed upon by the trial court. This is in compliance with our rule 20 (§ 21–2–1(20), subd. 1, N.M.S.A., 1953 Comp.). See National Mut. Savings & Loan Ass'n v. Hanover Fire Ins. Co., 1936, 40 N.M. 44, 53 P.2d 641; Miera v. State, 1942, 46 N.M. 369, 129 P.2d 334; Taylor v. Shaw, 1944, 48 N.M. 395, 151 P. 2d 743; and State Highway Comm. v. Southern Union Gas Co., 1959, 65 N.M. 217, 334 P.2d 1118. We see no reason why the rule should not apply to plaintiff's assertion here. Therefore, it will be disregarded, except insofar as it may relate to the determination of the basic issue.

Chapter 179 of the Session Laws of 1955, being §§ 64–13–31 to 64–13–78, N.M.S.A., 1953 Comp. (Pocket Supp.), is an adaptation of the so-called Uniform Motor Vehicle Operator's and Chauffeur's License Act, which we understand has been enacted into law, in whole or in part, in at least nineteen other states. Practically all the states have a provision empowering some administrative agency to suspend or revoke licenses. However, unfortunately, those states which have passed upon this particular section of the statute have not adopted the uniform law in the exact recommended form, and therefore their decisions on this subject are not precisely in point. Our statute, insofar as it is pertinent, is as follows:

§ 64–13–60, N.M.S.A., 1953 Comp. (Pocket Supp.):

"(a) The division is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:

\*   \*   \*   \*   \*   \*

"4. Is an habitually reckless or negligent driver of a motor vehicle;

\*   \*   \*   \*   \*   \*

"(b) Upon suspending the license of any person as hereinbefore in this section authorized, the division shall immediately notify the licensee in writing and upon his request shall afford him an opportunity for a hearing as early as practical within not to exceed twenty (20) days after receipt of such request in the county wherein the licensee resides unless the division and the licensee agree that such hearing may be held in some other county. Upon such hearing the commissioner or his duly authorized agent may administer oaths and may issue sub-

poenas for the attendance of witnesses and the production of relevant books and papers and may require a reexamination of the licensee. Upon such hearing the division shall either rescind its order of suspension or, good cause appearing therefor, may continue, modify or extend the suspension of such license or revoke such license."

The actual order of suspension by the department was as follows:

"The records of this department show sufficient evidence that the privilege to operate a motor vehicle of the hereinabove named person should be suspended for the following reason: Is an habitual reckless or negligent driver of a motor vehicle."

Johnson contends that the statute above quoted is invalid because it fails to contain any fixed standard or guide to which the motor vehicle commissioner must conform to determine whether or not a driver is an habitual reckless or negligent driver of a motor vehicle.

As hereinabove stated, the statutes of other jurisdictions vary in one or more ways from that which our legislature enacted, and, therefore, the cases cited by the plaintiff are not in point and not particularly helpful. This is true for the added reason that in each jurisdiction which has passed upon the question involved, the courts thereof have been guided, to a large extent, by prior pronouncements of that same court. In a like manner, so must we be guided.

The majority of jurisdictions throughout the country hold that a license to operate a motor vehicle is a mere privilege, and not a property right; and is subject to reasonable regulation under the police power in the interest of public safety and welfare. Commonwealth v. Funk, 1936, 323 Pa. 390, 395, 186 A. 65, 67; Rosenblum v. Griffin, 1938, 89 N.H. 314, 197 A. 701, 704, 115 A.L.R. 1367, 1372; Sullins v. Butler, 1940, 175 Tenn. 468, 135 S.W.2d 930, 932, citing 5 Am.Jur. 593, 42 C.J. 740, 746; Larr v. Dignan, 1947, 317 Mich. 121, 26 N.W.2d 872, 874; Ballow v. Reeves, Ky.1951, 238 S.W.2d 141, 142; Hadden v. Aitken, 1952, 156 Neb. 215, 222, 55 N.W.2d 620, 623, 35 A.L.R.2d 1003; Gillaspie v. Department of Public Safety, 1953, 152 Tex. 459, 466, 259 S.W.2d 177, 182, certiorari denied 1954, 347 U.S. 933, 74 S.Ct. 625, 98 L.Ed. 1084; and State v. Stehlek, 1953, 262 Wis. 642, 56 N.W.2d 514. We are in accord with these holdings. Therefore, a driver's license being a privilege, there is no denial of due process of law resulting from placing the power to revoke or suspend the same in an administrative officer. The automobile is a dangerous instrumentality and the improper use thereof creates a likelihood of serious menace to public safety and authorizes the most stringent use of the government's po-

lice power. The licensee's right of review, as provided by law, is his sufficient protection that powers will be reasonably and fairly administered. La Forest v. Board of Commissioners, 1937, 67 App.D.C. 396, 92 F.2d 547.

With respect to the contention as to unlawful delegation of powers or the claimed lack of a fixed standard, we have only to point to our own statutes and court decisions in order to resolve plaintiff's contention. "Habitual" is a term, the definition of which is known to all. However, should there be any question with respect thereto, it is defined by Webster's New International Dictionary, Second Edition, Unabridged, as follows:

"1. Of the nature of a habit; according to habit; established by, or repeated by force of, habit; customary; as, the *habitual* practice of sin; *habitual* drunkenness.

"2. Doing, practicing, or acting in some manner by force of habit; customarily doing a certain thing; as, a *habitual* drunkard is one given to habitual drunkenness. * * *"

"Reckless driving" is defined by statute, being § 64–22–3, N.M.S.A., 1953 Comp., as follows:

"(a) Any person who drives any vehicle carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, is guilty of reckless driving."

The term "negligent" or "negligent driver" has been considered by us on frequent occasions and is the subject of an instruction to juries in practically every case involving the operation of a motor vehicle. From an examination of the cases from this court, it would appear that an approved definition is as follows:

" 'Negligent conduct may be either:

" '(a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another, or

" '(b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do.' Sec. 284 Restatement of the Law of Torts."

Krametbauer v. McDonald, 1940, 44 N.M. 473, 104 P.2d 900; and Cotter v. Novak, 1953, 57 N.M. 639, 261 P.2d 827.

With the above definitions in mind, it would seem that the commissioner of motor vehicles has a definite and tangible standard to guide him in determining whether or not a driver is an habitual reckless or negligent driver, and that therefore the provision of the statute does not violate the section of the constitution urged by

plaintiff. Even though it may be urged that there still remains some discretion in the commissioner, when the statute and the definitions mentioned above are considered, we believe that it falls within that class of statutes contained in the exception stated in State ex rel. Sofeico v. Heffernan, 1936, 41 N.M. 219, 67 P.2d 240, 245, as follows:

" 'It is also well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action, but on the other hand, some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare.' "

The public health, safety and general welfare are primary considerations in the regulation and control of the use of the public highways.

We then proceed to a consideration of the other assertions by the plaintiff, but it is not necessary for us to set out specifically or to answer each of the other points raised by the plaintiff in his brief because there is one problem, not raised in the briefs, which is determinative of the appeal.

The dispute relates to what type of a hearing should be granted in the district court under the provisions of § 64–13–65,

N.M.S.A., 1953 Comp. (Pocket Supp.), being § 311, Chapter 179 of the Session Laws of 1955. The statute is as follows:

"Any person denied a license or whose license has been canceled, suspended or revoked by the division except where such cancelation or revocation is mandatory under the provisions of this act [64–13–31 to 64–13–78] shall have the right to file a petition within thirty (30) days thereafter for a hearing in the matter in the district court in the county wherein such person shall reside and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for hearing upon thirty (30) days' written notice to the commissioner, and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner is entitled to a license or is subject to suspension, cancelation or revocation of license under the provisions of this act."

It has long been the policy in the state of New Mexico, as shown by the various decisions of this court, that on appeals from administrative bodies the questions to be answered by the court are questions of law and are actually restricted to whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence,

and, generally, whether the action of the administrative head was within the scope of his authority. Floeck v. Bureau of Revenue, 1940, 44 N.M. 194, 100 P.2d 225; Harris v. State Corporation Commission, 1942, 46 N.M. 352, 129 P.2d 323; Chiordi v. Jernigan, 1942, 46 N.M. 396, 129 P.2d 640; Yarbrough v. Montoya, 1950, 54 N.M. 91, 214 P.2d 769; and Transcontinental Bus System, Inc. v. State Corporation Commission, 1960, (No. 6508), N.M., 352 P.2d 245.

This rule is based upon the division of powers among the three branches of government, and this court has gone a long way to preserve this separation. In Yarbrough v. Montoya, supra, we were called upon to construe the meaning of a trial de novo provision contained in the liquor statute which had been added as an amendment after the decisions in the Floeck and Chiordi cases. The court said that the Floeck case answered the contention in these words:

"'Assuming the constitutionality of Sec. 1303, it did not undertake to vest in the district court the administrative function of determining whether or not the permit should be granted. It gave the court authority only to determine whether upon the facts and law, the action of the Commissioner in cancelling the license was based upon an error of law or was unsupported by substantial evidence or clearly arbitrary or capricious (Ma-King Products Co. v. Blair, 271 U.S. 479, 46 S.Ct. 544, 70 L.Ed. 1046); otherwise it would be a delegation of administrative authority to the district court in violation of the Constitution.'" [54 N.Mex. 91, 214 P.2d 772.]

And immediately following the above quotation, the court said:

"The duty of passing upon an application for a liquor license is not related to or an incident of the discharge of judicial duties.

"We will adopt the construction of the amendment under which it can be held to be constitutional."

We can see no great difference between the cases involving appeals from the administrative action of the corporation commission or the liquor director than those from the commissioner of motor vehicles. The suspension of an operator's license, even though perhaps quasi judicial, is purely an administrative act and not a judicial duty. See Hadden v. Aitken, supra; Commonwealth v. Cronin, 1939, 336 Pa. 469, 9 A.2d 408, 125 A.L.R. 1455; Commonwealth v. Funk, supra; and McAnerney v. State, 1959, 9 Utah 2d 191, 341 P.2d 212.

Based upon the foregoing, we conclude that the language in the quoted portion of the statute, supra, "to determine whether the petitioner is entitled to a license or is subject to suspension, cancela-

tion or revocation of license under the provisions of this act," means that it is for the court to determine only whether grounds for suspension, cancellation or revocation exist. This is the limit of the court's jurisdiction, and the court has no right to substitute its judgment for that of the commissioner or to enlarge the order of suspension.

When we consider the record in this case, it appears that, at the administrative hearing, the commissioner's representative had before him as evidence a transcript of many convictions on the part of Johnson. These consisted principally of speeding, failing to dim lights, and running stop sign convictions, twenty-four in number between November 25, 1953 and January 17, 1958. Johnson was represented by counsel, but, insofar as the record discloses, failed to submit any evidence either to rebut the record of traffic violations or of any other type.

It is clear that the plaintiff failed to produce facts showing that the actions of the commissioner were unreasonable, arbitrary or capricious. The only real error committed by the trial court was in enlarging the term of suspension and in stating additional grounds under which the court believed the license should be suspended. In this respect, the trial court was acting in the utmost good faith and, no doubt, was considering the tremendous highway accident and death toll with which we are all so very cognizant. The court apparently felt that the plaintiff in this case needed to be dealt with more harshly than had been determined by the commissioner. However, as we have said, such action was beyond the jurisdiction of the trial court, even though it would seem that the action was fully warranted.

It appears from the briefs filed by the parties with respect to the motion to dismiss above discussed that the plaintiff applied for and received a renewal license during the pendency of this appeal. This renewal license was issued, even though § 64–13–40, N.M.S.A., 1953 Comp. (Pocket Supp.), provides in part as follows:

"The division shall not issue any license hereunder:

\*    \*    \*    \*    \*    \*

"3. To any person, as an operator or chauffeur, whose license has been suspended during such suspension, nor to any person whose license has been revoked, except as provided in section 308 [64–13–62];

\*    \*    \*    \*    \*    \*

"9. To any person when the commissioner has good cause to believe that the operation of a motor vehicle on the highways by such person would be inimical to public safety or welfare."

We can only assume that the commissioner did not refuse to issue the new

license because the judgment had been superseded on appeal to this court. Thus, it is apparent that, inasmuch as the valid suspension was for "a period of six months from March 16, 1958," the same has long since expired. The license statute is silent on whether supersedeas is proper in such a proceeding as this, and we express no opinion thereon, particularly as the commissioner did not contest the granting of the supersedeas bond. Perhaps this is a matter which the legislature might wish to consider in providing, by law, either allowance or refusal of supersedeas in this type of proceeding, and possibly, if it is determined to allow the same, to provide for a deferment of a suspension which would apply to both existing and renewal licenses until after final disposition. However, this is a legislative and not a judicial problem, and we do not feel that it would be proper to suggest a definite answer thereto.

Of course, the statute does provide for revocation of a license as distinguished from suspension under certain circumstances, and the commissioner having such statutory authority, together with authorization to refuse to issue a license in a proper case, should be a sufficient protection to the public so as to prevent an avoidance of the provisions of the law as has occurred here. Compare Boston v. Garrison, 1953, 152 Tex. 253, 256 S.W.2d 67; and Hoover v. Texas Department of Public Safety, Tex.Civ.App.1957, 305 S.W.2d 228.

It follows from what has been said that the case must be remanded to the district court, with direction to set aside its judgment and to enter one sustaining the order of the commissioner.

It is so ordered.

COMPTON and MOISE, JJ., concur.

McGHEE, C. J., being absent from the State, not participating.

CHAVEZ, J., not participating.