452 P.2d 179

CITY OF ROSWELL, Applicant-Appellee,

Carlsbad Irrigation District, Protestant-Appellee,

S. E. Reynolds, State Engineer of the State of New Mexico, Respondent-Appellee,

v.

H. C. BERRY, Protestant-Appellant.

No. 8571.

Supreme Court of New Mexico.

March 24, 1969.

Catron & Catron, Thomas A. Donnelly, Santa Fe, for appellant.

Schauer & Stiff, Roswell, Boston E. Witt, Atty. Gen., F. Harlan Flint, Peter B. Shoenfeld, Sp. Asst. Attys. Gen., Santa Fe, for appellees.

## OPINION

WOOD, Judge, Court of Appeals.

The appeal is concerned with the regulation of underground water rights. Two issues pertain to the State Engineer's jurisdiction. One issue pertains to the findings concerning impairment.

Roswell (City of Roswell) sought to change the location of wells and the place and purpose of use of water from the wells. Its purpose was to establish a new well field as a municipal water supply. The water rights involved are rights to appropriate water from the Roswell Artesian Basin. Carlsbad (Carlsbad Irrigation District) and Berry (Mr. H. C. Berry) protested the application. At the hearing before the State Engineer, Roswell and Carlsbad entered a stipulation. Berry contends this stipulation deprived the State Engineer of jurisdiction. Berry appealed the State Engineer's decision to the District Court. After this appeal was taken, the State Engineer amended his order. Berry claims the State Engineer was without jurisdiction to amend his order. The District Court affirmed the State Engineer's decision. Berry attacks two of the findings on which this affirmance was based. He also contends that the findings show an impairment to his water rights.

*Jurisdiction—the effect of the stipulation.*

Roswell's application was under § 75–11–7, N.M.S.A. 1953 (Repl.Vol. 11, pt. 2). That section provides for "advertisement" as in the case of original applications. The statute on original applications to appropriate underground water is § 75–11–3, N.M.S.A. 1953 (Repl.Vol. 11, pt. 2). This section requires publication of "* * * a notice of the filing of such application, and that objections to the granting thereof may be filed * * *." Berry does not contend that these provisions were not followed in connection with Roswell's application. Because of the stipulation between Roswell and Carlsbad at the beginning of the administrative hearing, Berry claims that Roswell's application was amended

and that notice of the asserted amended application had to be published. Since this was not done, Berry contends the State Engineer lacked authority to proceed with the hearing.

Generally speaking, under the stipulation, Roswell agreed to permanently retire and abandon 1500 acre-feet of valid water rights if the State Engineer approved its application. Berry claims:

"* * * the offer to retire rights, without evidencing the character or specific nature of such rights, the location thereof, or without formally specifying such rights in the written application of the city or without reference thereto by publication, fails to put the public on notice and fails to comply with the requirements of Section 75–11–7 N.M.S.A., 1953 Compilation."

The issue, in proceedings under § 75–11–7, supra, is whether approval of the application would impair existing rights. In reaching a decision in connection with the application, the State Engineer has the positive duty to determine whether existing rights would be impaired. Heine v. Reynolds, 69 N.M. 398, 367 P.2d 708 (1962). The principle underlying the statutory requirement of application, notice and hearing is to insure that the change proposed in the application will not impair the rights of other appropriators. Application of Brown, 65 N.M. 74, 332 P.2d 475 (1958).

In deciding the issue of impairment, the State Engineer is not limited to either an approval or rejection of the application in toto. In order to prevent an impairment of rights, he has authority to approve an application subject to conditions. W. S. Ranch Company v. Kaiser Steel Corporation, 79 N.M. 65, 439 P.2d 714 (1968); City of Albuquerque v. Reynolds, 71 N.M. 428, 379 P.2d 73 (1962). The stipulation indicated Roswell's willingness to accept such a condition—a retirement of 1500 acre-feet of water rights. Thus, the stipulation was material to and an item to be considered on the issue of impairment of water rights.

Roswell's purpose in entering the stipulation was to offset the effects of its proposed new well field on the flow of the Pecos River. Since Roswell was the applicant, it had the burden of proving that its proposed well field would not impair existing rights. Heine v. Reynolds, supra. The stipulation was one item in its attempt to meet that burden.

The stipulation, then, is both a proposed condition to Roswell's application and an evidentiary item on the issue of impairment.

Berry contends that the stipulation had the effect of amending Roswell's application. This is not correct. The stipulation did not change what Roswell sought by the application. It still sought the same change in well location and the same change in place and purpose of use of certain water rights. Nor did the stipulation change the issue to be determined in connection with the application. The issue was still whether existing rights would be impaired.

Berry claims that notice should have been given that Roswell proposed to retire the 1500 acre-feet of water rights. In addition, he claims that the notice should have specified the particular rights to be retired, and the character, specific nature and location of the particular rights. Section 75-11-7, supra, and § 75-11-3, supra, require the notice to state that the application has been filed so that objection to the application may be filed. The purpose of giving notice is to insure the change proposed in the application will not impair existing rights. Application of Brown, supra. These statutes do not require the notice to include a proposed condition to the application nor to state evidentiary details which may be considered on the issue of impairment.

The stipulation did not have the effect of amending Roswell's application. Neither the proposed retirement of rights nor the details of those rights was required

to be published. The stipulation did not deprive the State Engineer of jurisdiction to proceed with the hearing.

### Jurisdiction—amendment of the State Engineer's order.

The State Engineer approved Roswell's application, but the water appropriation approved was for an amount less than requested by Roswell in its application. This approval was conditioned upon the permanent retirement of 1500 acre-feet of other water rights of Roswell. Berry appealed this decision.

Two days after Berry filed his appeal, the State Engineer issued an "Amendment to Order of Approval". The original decision identified 1500 acre-feet of rights to be retired. The amended order made no change in the total of rights to be retired. It did, however, delete 381 acre-feet of rights identified for retirement and substituted, in lieu thereof, another 381 acre-feet of rights to be retired.

Berry claims the amended order was an attempt to reopen the original administrative proceeding or an attempt to modify the final decision of the State Engineer. He asserts the State Engineer was without jurisdiction—that is, without authority—to either reopen the proceeding or modify his final decision once the appeal was filed in the District Court.

Berry's argument is based on the assumption that there was an attempt to reopen the proceeding or to modify the final decision. This assumption is not true. Accordingly, we do not reach the issue of an administrative agency's authority to reopen a proceeding or to modify a final decision. As to that issue see Annot. 73 A. L.R.2d 939 (1960).

The State Engineer's decision approved a portion of Roswell's application and conditioned this partial approval on a retirement of 1500 acre-feet of rights. This decision was neither reopened nor modified. What, then, was this order that made changes in the specific water rights that

were to be retired? We agree with the trial court's finding, that these changes:

"\* \* \* pertained solely to administrative conditions imposed by the State Engineer as a prerequisite to the utilization of the rights applied for and approved, \* \* \*"

The State Engineer has authority to approve an application subject to conditions. W. S. Ranch Company v. Kaiser Steel Corporation, supra; city of Albuquerque v. Reynolds, supra. Retirement of the 1500 acre-feet was such a condition. The original order implemented this condition by identifying 1500 acre-feet of rights to be retired. The amended order did no more than make a change in the manner the condition was to be implemented. It made a change in 381 acre-feet of the rights to be retired. Having authority to condition his approval, the State Engineer had authority to specify how the condition was to be met under the statute then in force, § 75–2–8, N.M.S.A. 1953 [Repealed by Laws 1967, ch. 246, § 1—for current law see § 75–2–8, N.M.S.A. 1953 (Repl.Vol. 11, pt. 2)].

The State Engineer had authority to specify how the conditions he imposed were to be met. Berry claims that this authority could not be exercised once the appeal was filed. He does not contend that any statutory provision prohibited the State Engineer from exercising this authority after he took his appeal. He relies on decisions dealing with the jurisdiction of a District Court after that court's decision has been appealed. See State v. White, 71 N.M. 342, 378 P.2d 379 (1962).

We do not decide whether decisions concerning the jurisdiction of District Courts after an appeal is taken apply to the jurisdiction of the State Engineer after his ruling is appealed. Even if such decisions are applicable, they do not prohibit the State Engineer from taking the action he did take. If applicable, these decisions support the action taken by the State Engineer. Under State v. White, supra, the District Court has jurisdiction to pass upon motions pending when the appeal is taken. Here, Roswell's request to make a substitution in 381 acre-feet of the rights to be withdrawn was pending at the time Berry appealed. In Prudential Insurance Company of America v. Anaya, 78 N.M. 101, 428 P.2d 640 (1967) the judgment awarded costs. The District Court had authority to fix the amount of costs after the appeal was taken since the judgment had not been superseded. Here the State Engineer's decision had neither been stayed nor superseded and the amended order did no more than to fix the method of meeting the condition imposed by the decision.

We hold that Berry's appeal did not prohibit the State Engineer from exercising his authority to specify how the condition imposed by the decision was to be met.

*Findings concerning impairment.*

There are two issues concerning the findings of the State Engineer. The first issue challenges the propriety of two of the findings. The second issue is that one of the findings establishes impairment as a matter of law.

Roswell's application involved 5086.5 acre-feet of water rights. All the rights were being used for irrigation purposes. 856.8 acre-feet of water was being taken at the place where the proposed new well field would be located. Roswell's application, if approved, would result in the taking of an additional 4229.7 acre-feet of water at this site. The State Engineer found that pumping of an additional 4229.7 acre-feet of water at this site would cause "\* \* \* an ultimate and total lowering of the artesian water level of 0.16 feet in protestant's artesian wells. \* \* \*"

The State Engineer considered the effects upon the sources of water involved in Roswell's application. In his Finding No. 12, he considered these effects in the light of three factors. This finding states that if: (1) pumping of the entire 5086.5 acre-feet per year for irrigation purposes is stopped, (2) pumping of 4143.3 acre-feet per year for municipal purposes is begun

(this is the amount that was approved) and (3) 1500 acre-feet per year of "* * * valid existing water rights in the vicinity of the City of Roswell are permanently retired and abandoned * * *" then the result, at all times in the future, would be accretions to each of the three sources of the water involved. Berry challenges this finding.

Under the conditions of Finding No. 12, water-level declines in the artesian aquifer in the vicinity of Berry's wells will be less than the 0.16 feet stated above.

In general, as water levels decline in the artesian aquifer, the salinity of the artesian water will increase.

Finding No. 15, challenged by Berry, reads:

"The additional water-level declines in artesian wells of the protestant under the conditions set forth in finding 12 above will have a negligible effect on the chemical quality of the water pumped from protestant's wells."

(a) *The challenge to Findings No. 12 and No. 15.*

Berry claims:

"* * * that the State Engineer and the Trial Court erred in disregarding the existing, uncontradicted evidence that lowering of the water level in Appellant's artesian wells would lead to a worsening of the quality of the water and thereby constitute an impairment to his existing water rights. * * *"

There is evidence (allegedly uncontradicted) that if Roswell's proposed move is granted, "as contemplated by the application", the move would "* * * increase salinity hazard in the location of the Berry farms in the artesian water supply."

This claim is based on Roswell's application, as made. The State Engineer's decision is not based on the application, as made. His decision is based on the conditions of Finding No. 12. On the basis of those conditions, Finding No. 15 states there will be a negligible effect on the chemical quality of the water in Berry's

wells. If Findings No. 12 and No. 15 are proper, we will not reach Berry's claim that uncontradicted evidence was disregarded. If the findings are proper, we have no reason to consider Berry's claim which proceeds on a basis different from the State Engineer's decision as reflected in the findings. Of necessity then, Berry challenges Findings No. 12 and No. 15.

If Finding No. 12 is improper, then Finding No. 15 also falls since it is based on Finding No. 12. In Finding No. 12, the State Engineer considered three factors. Berry does not object to the first two—stopping pumping of 5086.5 acre-feet for irrigation purposes and pumping of only 4143.3 acre-feet for municipal purposes. Berry contends the State Engineer should not have considered a retirement of 1500 acre-feet of Roswell's existing water rights.

■ Berry seems to argue that since Roswell and Carlsbad stipulated to a proposed retirement of this 1500 acre-feet, the State Engineer could not properly consider it in connection with Roswell's application. This argument disregards the fact that the State Engineer has the authority to impose conditions in order to prevent impairment of rights. W. S. Ranch Company v. Kaiser Steel Corporation, supra; City of Albuquerque v. Reynolds, supra. In considering the effect of a retirement of 1500 acre-feet of Roswell's rights, the State Engineer was proceeding within his authority. The stipulation between Roswell and Carlsbad did not prevent the State Engineer from exercising this authority. The stipulation did not prevent the State Engineer from considering this 1500 acre-feet and requiring their retirement as a condition to approval of Roswell's application.

The challenges to Findings No. 12 and 15 are without merit.

(b) *Asserted impairment as a matter of law.*

Under the conditions of Finding No. 12, there will be a decline in the water-level of Berry's artesian wells of less than 0.16 feet. Finding No. 15 states that this de-

**116**

cline will have a negligible effect on the chemical quality of the water pumped from Berry's wells.

Berry contends this "negligible effect" shows there will be a worsening in the quality of the water and that any worsening, however slight, constitutes an impairment. He relies on Heine v. Reynolds, supra. This decision held that the issue under § 75-11-7, supra, is whether there is "impairment" and not whether there is "substantial impairment". If the application, however conditioned, would result in an impairment, the application should be denied. Whether there is an impairment depends upon the facts of each case. Heine v. Reynolds, supra; Mathers v. Texaco, Inc., 77 N.M. 239, 421 P.2d 771 (1966).

We do not decide whether there is an impairment if there is a "worsening" (Berry's term) in the quality of water. Berry asserts there was a worsening. The State Engineer's finding, not challenged as being unsupported by substantial evidence, is that lowering of the level of water in Berry's wells would have a "negligible effect" on the chemical quality of the water. A "negligible effect" is an effect of such little consequence that it should be disregarded. See Webster's Third New International Dictionary, "negligible". The quality of the water has not worsened (deteriorated) as a result of the lowering of the water level, if the result of such lowering is of such little consequence that it should be disregarded.

The finding of "negligible effect" does not require a determination, as a matter of law, that the chemical quality of the water in Berry's artesian wells was impaired by a lowering of the water level in those wells by less than 0.16 feet.

The District Court affirmed the State Engineer's decision. We affirm the District Court's affirmance.

It is so ordered.

NOBLE, C. J., and COMPTON, J., concur.